JOHNSON, C.J.,
concurs in part and dissents in part.
_|jWhile I agree with the majority’s interpretation of La. R.S. 9:2794(D)(1), I must respectfully dissent from the majority’s finding that plaintiffs failed to prove Dr. Shamblin met the requirements of La. R.S. 9:2794(D)(1).
Plaintiffs attempted to submit evidence proving Tulane’s accreditation in 1958, the year Dr. Shamblin graduated. The trial court disallowed the evidence on the basis of hearsay, thus it was proffered. Plaintiffs’ Proffer # 5 consists of a faxed letter from the Associate General Counsel of Tulane to plaintiffs’ counsel. The letter advises that pursuant to a subpoena served on Tulane requesting production of documentation verifying the status of Tulane’s accreditation in 1958, Tulane obtained a printout of the electronic records maintained by the LCME “concerning the history of approvals and/or accreditation by the LCME.... ” Tulane’s counsel advised that the document was supplied directly from Dan Hunt, LCME Secretary and Senior Director of Accreditation Services. Attached to the letter is a copy of an email from Dan Hunt to Tulane’s counsel, as well as the relevant printout of electronic records. For the time period affecting 1958, the printout demonstrates that Tulane was approved for accreditation in 1955 and then again in 1965. There is no lapse in approval during this 12ten year period.
The trial court considered the document hearsay. Relevant to the trial court’s decision is the email from Dan Hunt to Tulane’s counsel, which states “Attached is the full history that the LCME has for Tulane. I believe that this record is accurate but given that it was written by many hands over many decades, I cannot be absolutely sure of the accuracy of each item, but I hope it serves your purpose.” Plaintiffs argue the trial court is not bound by the rules of evidence in determining preliminary issues and determining whether one is qualified to be a witness. I agree.
La. C.E. art. 104(A) provides, in pertinent part:
*206 Questions of admissibility generally. Preliminary questions concerning the competency or qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court, subject to the provisions of Paragraph B. In making its determination it is not bound by the rules of evidence except those with respect to privileges.
Further, La. C.E. art. 1101(C) provides, in pertinent part: “[T]he provisions of this Code shall not apply to the following: (1) The determination of questions of fact preliminary to admissibility of evidence when the issue is to be determined by the court under Article 104.” Considering the proffered evidence in light of determining whether Dr. Shamblin is qualified to testify as an expert witness, it was sufficient to demonstrate Tulane was accredited in 1958.
I also find persuasive plaintiffs’ assertion that in order for Dr. Shamblin to have been licensed, he must have graduated from a medical school in good. standing with the Louisiana State Board of Medical Examiners. Plaintiffs submitted evidence at the hearing that Dr. Shamblin .passed the physician licensing examination and was licensed to practice medicine by the State of Louisiana in 1959. At that time, as well as today, Title 37 of the Louisiana Revised Statutes governs the practice of medicine and gives the Louisiana State Board of Medical Examiners the power to examine all ^applications for the practice of medicine.[1] At the time Dr. Shamblin was licensed, La. R.S. 37:1271 provided for qualifications to practice medicine, with Section (4) providing that the person “present to the board a diploma from a college in good standing of any sect teaching medicine or the healing art.” Similarly, La. R.S. 37:1272(4) currently provides that a person “[pjresent to the board a valid diploma from a medical college in good standing with the board or have been actively engaged in the practice of medicine, in a manner determined by the board to have been satisfactory, for not less than four years under a temporary permit issued pursuant to R.S. 37:1275.” I find the reasonable construction of “a college in good standing” to mean a medical school approved by the LOME.[2] Thus, Dr. Sham-blin could not have been licensed had he not had a diploma from a medical school accredited by the LOME.
Considering all of this information, along with the fact that the LOME directory lists Tulane University School of Medicine as being fully accredited, with its first year of accreditation on or before 1942,[3] the evidence was sufficient to find Dr. Sham-blin satisfies the requirement of La. R.S. 9:2794(D)(l)(d). In my view, the court of appeal correctly reversed the judgment of the trial court disqualifying Dr. Shamblin from testifying as an expert, and also correctly reversed the grant of directed verdict in favor of Dr. Zeichner; as it was granted due to plaintiffs’ failure to present expert testimony in support of their case.

. La. R.S. 37:1269 (1959) (currently La. R.S. 37:1270).

. See England v. Louisiana State Bd. of Medical Examiners, 259 F.2d 626, 629 (5th Cir.1958) (Wisdom, J., dissenting) ("the Board has consistently construed 'a college in good standing' to mean a medical school approved by the Association of American Medical Colleges or the Council on Medical Education and Hospitals of the American Medical Association.”)

.LCME, Directory of Accredited Medical Education Programs, http://www.lcme.org/ directry.htm (Last visited March 5, 2013).